## TOM PARKEY v. STATE.

No. A-8951.   March 20, 1936.
(56 Pac. [2nd] 144.)

C. J. Moody and Blanton, Curtis & Blanton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J.   This appeal is from a judgment of the district court of Garvin county, wherein the defendant, Tom Parkey, was convicted of rape alleged to have been committed in said county, according to the allegations of the information, on or about the 14th day of February, 1932, upon one Pauline Solley, an unmarried female person under the age of 16 years and of the age of 15 years

past; said defendant being over 18 years of age, and of the age of 26 years; said judgment having been rendered January 7, 1935, in pursuance of a verdict of the jury finding him guilty as charged and fixing his punishment at confinement in the state penitentiary for a term of one year.

The testimony shows that the prosecutrix was between 15 and 16 years of age; that no man had ever had sexual intercourse with her except the defendant. That some one had sexual intercourse with her is indisputable, and that such intercourse occurred at the time she was under the age of consent.

The testimony of the prosecutrix is that she lives three miles west of Paoli, in the Florence Chapel community; that on or about the 14th day of February, 1932, she attended the Florence Chapel, leaving the chapel that night about 9 o'clock with the defendant, Tom Parkey, together with Lawrence Watson, Cecile Minyen, Vida Purser, and Pat Irvin; that after going about a quarter of a mile she and the defendant turned off on another road and he commenced hugging and petting her, and finally forced her down and had intercourse with her the first time; that about a week later he had sexual intercourse with her; that some time later, while attending a party at Kemp Lake, he took her for a boat ride that night; that he tied the boat to a bush on the bank, and they left the boat and had sexual intercourse before returning; that the last act was Wednesday night after Easter Sunday, after they had attended church in Paoli; that as a result she became pregnant and she so advised him; that he advised her to go to a doctor and have something done; that her child was born January 6, 1933; that the defendant was the father of her child.

The defendant, as a witness in his own behalf, denied having improper relations of any kind with the prosecutrix. He testified that he had lived in Garvin county 23 years. That Pat Irvin came to "our house and said, 'I have you a date,'" and they got in the car with Edgar and Lawrence Watkins and drove to Solley's home. Vida Purser was staying with Miss Solley; Pat Irvin was going with Vida. Then they all went to the Florence Chapel, and left there together. Edgar Watkins got his girl, drove up to the corner, and waited for them in the lane. Pat and Vida started on ahead, and he with Pauline followed them. That he did not have sexual intercourse with this Solley girl on this occasion or on the occasion of the party at Kemp Lake or at any other time. That when school closed he walked home with Pauline and she told him about being in trouble and told him that Carroll Lewis was responsible for it. On cross-examination he stated that he left the country, but not on account of this trouble.

Pat Irvin testified: "We came out of the church that night and went up the road a quarter of a mile towards Paoli, and found the car a quarter of a mile south and three-quarters east of the church. Edgar Watson and Mamie Minyen were in the car and were waiting for us. Tom Parkey and Pauline came up to the car behind us." That he did not see anything wrong between Tom Parkey and the Solley girl that night. Vida Purser's father came along and told Vida to come on home.

Several errors are assigned, but in the brief filed for appellant but two questions are discussed: First, error of the court in refusing to grant the defendant a new trial on the ground of newly discovered evidence, as set forth in the supplemental motion for new trial, filed in the trial court at the next term of court after the judgment had been pronounced on the verdict. Second, that the verdict

and judgment are not sustained by sufficient evidence, and are contrary to law.

The main contention is that a new trial should be granted because of the alleged discovery of new evidence, consisting of the testimony of Ray Purser and his son, Douglas Purser. The affidavits made by the Pursers were attached to the motion. That these new witnesses would testify that they were at the Florence Chapel on the evening of February 14th and started home behind the defendant and the prosecutrix; that they saw nothing that indicated that the defendant and this girl indulged in an act of sexual intercourse on that occasion.

On the hearing the state called affiants.

Ray Purser testified as follows:

"Q. Now, you did not see Tom Parkey and Pauline Solley all the time on this particular night? A. Lacking a quarter of a mile. Q. From that quarter of a mile on, you did not see them? A. No, sir."

Douglas Purser testified as follows:

"Q. On this occasion you did not see Pauline Solley and Tom Parkey all the time that night? A. No, sir."

A motion for new trial upon the ground of newly discovered evidence is addressed to the trial court's discretion, and its ruling thereon will not be disturbed on appeal except for an abuse of discretion; the presumption being that the discretion was properly exercised. McKinney v. State, 18 Okla. Cr. 562, 196 Pac. 974.

We think it is apparent that the defendant's affidavit, and the affidavits attached thereto, presented no facts which in the exercise of the sound discretion of the trial court would have justified the granting of a new trial on the ground of newly discovered evidence.

The record discloses that the testimony of Purser and his son was not newly discovered evidence, as the defendant testified that he knew at the time of the trial that they were at the church that night and that "they were along with us, or just behind us."

Upon the record before us we think the court properly overruled the motion.

It is contended that the testimony is insufficient to sustain the verdict and judgment. With this contention we cannot agree. After a full consideration of the testimony, we are satisfied the verdict of the jury is amply supported by the testimony. In a prosecution for statutory rape, evidence of other acts of sexual intercourse between the defendant and the prosecutrix, subsequent to the one charged and relied upon for a conviction, is admissible.

In the case of Morris v. State, 9 Okla. Cr. 241, 131 Pac. 731, 734, it is said:

"On reason and by great weight of authority, we think the correct rule is that, in a prosecution for 'statutory' rape, evidence of other acts of sexual intercourse between the same parties is admissible, including evidence of acts committed subsequent to the particular act relied upon for conviction, even though it proves other and distinctive offenses, as relevant to show the true relation of the parties to each other, and to characterize and explain the act for which the defendant is on trial. It is the general desire to satisfy lust that is involved in this class of cases, and this character of evidence tends to show lustful desire and disposition by showing continuousness of the illicit relation. However, the limits of time over which evidence of this kind may range is largely within the legal discretion of the trial court."

Having considered the questions presented, our conclusion is that the defendant had a fair trial and was

properly convicted. There being no error in the record, the judgment of the court below is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.